**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JEFFREY ALTMAN,**         ) | 1:09-cv-1000  AWI SMS |
|                             ) | |
|         **Plaintiff**,      ) | **ORDER ON THE PARTIES'** |
|     v.                      ) | **RESPECTIVE MOTIONS TO** |
|                             ) | **DISMISS** |
| **HO SPORTS COMPANY, INC., dba** ) | |
| **HYPERLITE, BEN SIMS, and DOES 1** ) | (Doc. Nos. 28, 29, 30) |
| **to 100**,                 ) | |
|                             ) | |
|         **Defendants.**     ) | |
| _____ ) | |

    This is a state law products liability case that was originally brought in the Kern County Superior Court against Defendant HO Sports Company, Inc. ("HOS"). HOS removed to this Court. Prior to removal, Plaintiff Jeffrey Altman ("Altman") identified Ben Sims ("Sims") as Doe 51. The only claim against Doe 51 was a products liability claim. Altman filed a motion to remand. The Court denied the motion on the basis that Sims was "fraudulently joined." The Court then granted HOS's motion to dismiss, as the compliant was a pre-printed, "check the boxes," state form. The Court granted Altman leave to include Sims under a fraud claim. Altman filed the First Amended Complaint ("FAC"). The FAC contains a cause of action for breach of warranties and a cause of action for strict products liability, retains Sims in the caption, but does not include Sims under either of the causes of action. Altman now moves to formally dismiss Sims without prejudice. HOS now moves to dismiss the entirety of the FAC. For the reasons that follow, both motions will be granted.

**BACKGROUND**

From the FAC, HOS manufactures and sells wakeboarding equipment and designed, manufactured, and distributed the Hyperlite 2008 Atlas Wakeboard Bindings ("the Atlas Bindings"). On June 22, 2008, Altman was wakeboarding in Kern County while wearing a pair of the Atlas Bindings. Altman was injured while using the Atlas Bindings in a reasonably foreseeable manner, i.e. while wakeboarding. The Atlas Bindings caused Altman to suffer permanent injury to his ankle as well as the loss of use and function of his ankle and foot.

The Atlas Bindings were defective in design and formulation and were unreasonably dangerous when they left HOS's hands and reached Altman without substantial alteration. The Atlas Bindings were dangerously defective beyond the extent contemplated by ordinary consumers, had inadequate warning and testing, had inadequate post-marketing warning and instruction, and the risks of the design exceeded the design's benefits. These defects also breached HOS's warranty that the Atlas Bindings would be substantially free from defects in design, material and workmanship and thereby fit for their ordinary purpose.

## I.   PLAINTIFF'S MOTION

*Plaintiff's Argument*

Altman argues that dismissal is appropriate because the case is in its infancy and neither discovery nor the pre-trial scheduling conference have occurred. Altman believed that Sims had previous knowledge that the Atlas Bindings were defective and that Sims concealed the truth and continued to distribute them. However, in light of the Court's order on HOS's motion to dismiss, Altman wishes to remove Sims because HOS has conceded Sims was acting within the scope of employment, it is desired that discovery begin and procedural battles end, and the Court ruled that Sims's employment status removed his potential liability from the products liability claim. In case HOS changes its position regarding Sims's scope of employment, dismissal should be without prejudice. Also, in a footnote, Altman's counsel states that he has other strategic reasons for dismissing without prejudice and that he would provide those reasons to the Court for an *in camera* inspection upon request.

*Defendant's Response*

Defendants argue that dismissal is appropriate, but it should be with prejudice.  First, Altman had the opportunity to dismiss the claims against Sims before Sims filed an answer.  HOS requested that Sims be voluntarily dismissed, but Altman refused and a motion to remand had to be hotly contested.  Second, the Court has already determined that the products liability claim against Sims is meritless.  There is nothing inequitable about dismissing this claim with prejudice.  Finally, Altman has not provided a sufficient explanation for his alleged need to dismiss the claim against Sims without prejudice.

*Legal Standard*

Federal Rule of Civil Procedure 41(a)(2) provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

In examining a request for dismissal under Rule 41(a)(2), a district court "must determine whether the defendant will suffer some plain legal prejudice as a result of the dismissal." Westlands Water Dist. v. United States, 100 F.3d 94, 96 (9th Cir. 1996); Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143, 145 (9th Cir. 1982).  "A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001); Waller v. Financial Corp. of Am., 828 F.2d 579, 583 (9th Cir. 1987).  The term "legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument." Smith, 263 F.3d at 976; Westlands, 100 F.3d at 97.  "[U]ncertainty because a dispute remains unresolved or because the threat of future litigation . . . causes uncertainty does not result in plain legal prejudice." Smith, 263 F.3d at 976; Westlands, 100 F.3d at 96-97.  "Also, plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." Smith, 263 F.3d at 976; Hamilton, 679 F.2d at 145.  "A dismissal under Rule 41(a)(2) normally is without prejudice, as

3

explicitly stated in that rule." Smith, 263 F.3d at 976. However, the district retains the discretion to dismiss an action with prejudice. Hargis v. Foster, 312 F.3d 404, 406 (9th Cir. 2002). "Dismissal with prejudice may be appropriate where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action." Williams v. Peralta Cmty. College Dist., 227 F.R.D. 538, 539-40 (N.D. Cal. 2005); Burnette v. Godshall, 828 F.Supp. 1439, 1443 (N.D. Cal. 1993).[1]

*Discussion*

There is no dispute that Sims should be dismissed from this lawsuit. Indeed, it is apparent that no prejudice would result to either Defendant from the dismissal of Sims. Smith, 263 F.3d at 976. The only issue is whether the dismissal should be with or without prejudice.[2] The only disclosed basis for Altman's requested dismissal without prejudice is a fear that HOS will attempt to change its position and argue that Sims was not acting within the course and scope of his employment when he sold Altman the Atlas Bindings.[3] See Court's Docket Doc. No. 28 at pp. 4, 5 (". . . Plaintiff now wishes to proceed directly against [HOS] and would like to reserve the right to proceed against Mr. Sims at a later point should [HOS] change their position about Mr. Sims acting within the course and scope of employment."), 7 & Doc. No. 35 at p.4.

The Court does not see that Altman's fears are well founded. If HOS later attempts to argue that Sims was not acting within the course and scope of his employment, it will likely be

---

[1] In determining whether a dismissal should be with or without prejudice, some courts examine "(1) the defendant's effort and expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, and (3) insufficient explanation of the need to take a dismissal." Williams, 227 F.R.D. at 540; Burnette, 828 F.Supp. at 1443. These considerations come from *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987). However, *Paulucci* listed these considerations in order to determine whether to grant a dismissal; they were not listed in order to determine whether a dismissal should be with or without prejudice. See Paulucci, 826 F.2d at 783.

[2] It is arguable that Sims has already been dismissed from this case since there are no causes of action alleged against him. See Davis v. Schwarzenegger, 2009 U.S. Dist. LEXIS 88123 (N.D. Cal. Sept. 4, 2009) (discussing the effect of voluntarily omitting parties and claims from an amended complaint); Palmer v. Woodford, 2009 U.S. Dist. LEXIS 3261 (E.D. Cal. Jan. 12, 2009) (same); see also Google, Inc. v. Affinity Engines, Inc., 2005 U.S. Dist. LEXIS 37369 (N.D. Cal. Aug. 12, 2005) (discussing the ability to re-allege claims that had been voluntarily omitted from an amended complaint). Since the parties have not addressed this issue, the Court makes no further comment.

[3] The Court does not consider Altman's undisclosed reasons as the Court does not know what those reasons may be. If Altman wished the Court to consider those reasons, he should have filed a motion to seal.

judicially estopped from doing so. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Klamath Siskiyou Wildlands Ctr. v. Boody, 468 F.3d 549 (9th Cir. 2006); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." Hamilton, 270 F.3d at 782; Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990). Generally, judicial estoppel applies when: "(1) the party's current position is clearly inconsistent with its earlier position, (2) the party was successful in persuading a court to accept its earlier position, and (3) the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Williams v. Boeing Co., 517 F.3d 1120, 1134 (9th Cir. 2008); see Hamilton, 270 F.3d at 782-83.

In resisting the motion to remand, HOS argued that Sims was acting within the course and scope of his employment with HOS when he sold the subject Atlas Bindings.[4] See Court's Docket Doc. No. 11 at pp. 1, 5, 6, 8. The Court relied on this position and ruled that Sims could not be held strictly liable because his conduct was within the course and scope of his employment with HOS. See id. at Doc. No. 19 at pp. 5, 6. All that would be required for judicial estoppel to apply would be some detriment to Altman or HOS obtaining some unfair advantage in this case. See Williams, 517 F.3d 1120, 1134. The potential application of judicial estoppel makes Altman's fear unpersuasive.

The only claim that Altman has formally attempted to allege against Sims is a strict products liability claim. Given the representations of HOS, that claim against Sims is unavailable as a matter of law. See Altman v. HO Sports Co., 2009 U.S. Dist. LEXIS 80662, *8-*10 (E.D. Cal. Aug. 20, 2009) (citing Soule v. GM Corp., 8 Cal.4th 548, 560 (1994); Arriaga v. CitiCapital Commercial Corp., 167 Cal.App.4th 1527, 1535 (2008)). Since the strict products

---

[4] HOS also submitted a declaration from Sims that stated Sims was acting in the course and scope of his employment. See Court's Docket Doc. No. 13.

5

liability theories are unavailable as a matter of law, it makes no sense to dismiss those claims without prejudice.  Therefore, the Court will dismiss Sims from this case and will make the dismissal with prejudice regarding the claims of strict products liability.  However, it is possible that other claims may be viable against Sims, although Altman has not identified such claims.  If Altman later determines that other causes of action are available against Sims, he may file a motion to amend his complaint to add non-strict products liability causes of action against Sims.

## II.     DEFENDANT'S MOTION

### *Legal Framework – Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)*.*  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court must also assume that general allegations embrace the necessary, specific facts to support the claim.  Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994).  But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the

defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d

7

1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Further, under the "incorporation by reference" doctrine, courts may review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000). The "incorporation by reference" doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel, 393 F.3d at 1076 (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

*Defendant's Argument*

HOS argues that Altman has only made a series of conclusory allegations that are simply a formulaic recitation of the elements of his claim. There are no factual allegations that show a product defect or a viable claim for products liability. When stripped of the legal conclusions, the complaint merely alleges that Altman was injured while using a product. In fact, an e-mail from Altman indicated that he was injured while attempting to perform "an extreme and radical wakeboarding maneuver." Further, the warning that appeared on the Atlas Bingind indicates that Altman was injured by a risk that is inherent in the "extreme sport" of wakeboarding.

With respect to the breach of warranty claim, in addition to alleging a series of legal conclusions, Altman fails to plead sufficient vertical privity. Altman simply alleges that he was a "user of the subject part." He does not allege that he purchased the Atlas Bindings from HOS.

*Plaintiff's Response*

Altman argues that he has alleged sufficient facts to place HOS on notice that he is

alleging a products liability theory against it.  There is no requirement that a plaintiff prove his case at the pleading stage.  Further, references to outside documents, such as Altman's e-mail and the Atlas Binding warning, is improper in the context of a Rule 12(b)(6) motion.  If the allegations are found to be inadequate, however, then leave to amend should be granted.  With respect to the breach of warranty claim, Altman "only wish[es] to proceed on [his] claim for products defect at this time and would ask that the court dismiss [his] Breach of Warrant[y] cause of action without prejudice."  Court's Docket Doc. No. 37 at p.2 n.1.

*Legal Standards*

California recognizes strict liability for three types of product defects – manufacturing defects, design defects, and warning defects (inadequate warnings or failure to warn).  Anderson v. Owens-Corning Fiberglass Co., 53 Cal.3d 987, 995 (1991); Karlsson v. Ford Motor Co., 140 Cal.App.4th 1202, 1208 (2006).

A design is defective in one of two ways.  Soule v. General Motors Corp., 8 Cal.4th 548, 566-67 (1994); Karlsson, 140 Cal.App.4th at 1208.  First, under the "consumer expectations test," a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner.  Barker v. Lull Engineering Co., 20 Cal.3d 413, 430 (1978); Karlsson, 140 Cal.App.4th at 1208; see also Soule, 8 Cal.4th at 562, 566.  Second, under the "risk-benefit test," a product's design is defective if the design embodies "excessive preventable danger," that is, the risk of danger inherent in the design outweighs the benefits of such design.  Barker, 20 Cal.3d at 430; Ford v. Polaris Industries, Inc., 139 Cal.App.4th 755, 766 (2006); see also Soule, 8 Cal.4th at 562, 567.  Under the risk-benefit test, if the plaintiff shows that his injury was caused by the product's design, the burden shifts to the defendant to establish that the benefits of the challenged design outweigh its inherent risk of harm.  Campbell v. General Motors, 32 Cal.3d 112, 119 (1982); Barker, 20 Cal.3d at 431; California Jury Instructions – Civil (CACI) (June 2009 ed.) § 1204.  The finder of fact may consider "among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, and the adverse consequences to the product and to the consumer that would result from

the alternative design." Barker, 20 Cal.3d at 431; Ford, 139 Cal.App.4th at 767. California courts have explained that:

> [T]he consumer expectations test is properly applied in cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective regardless of expert opinion about the merits of the design. In contrast, the test should not be used when the ultimate issue of design defect calls for a careful assessment of feasibility, practicality, risk, and benefit, since in many instances it is simply impossible to eliminate the balancing or weighing of competing considerations in determining whether a product is defectively designed or not.

Jones v. John Crane, Inc., 132 Cal.App.4th 990, 1002 (2005) (quotations omitted) (citing Soule, 8 Cal.4th at 562-63, 567). "The two tests provide alternative means for a plaintiff to prove design defect and do not serve as defenses to one another." McCabe v. American Honda Motor Co., Inc., 100 Cal.App.4th 1111, 1121 (2002).

As for warning defects, a "manufacturer owes a foreseeable user of its product a duty to warn of risks of using the product." Huynh v. Ingersoll-Rand, 16 Cal.App.4th 825, 833 (1993). Manufacturers are strictly liable for injuries caused by their failure to warn of known or reasonably scientifically knowable dangers at the time they manufactured and distributed their product. Johnson v. American Standard, Inc., 43 Cal.4th 56, 64 (2008); Carlin v. Superior Court, 13 Cal.4th 1104, 1108-09 (1996). However, a manufacturer is not required to warn "against every conceivable" risk associated with the use of its product, and it is "necessary to weigh the degree of danger involved when determining whether a warning defect exists." Wright v. Stang Mfg. Co., 54 Cal.App.4th 1218, 1230 (1997); Schwoerer v. Union Oil Co., 14 Cal.App.4th 103, 112 (1993); see also CACI at § 1205. Liability for a warning defect "does not attach if the dangerous propensity is either obvious or known to the injured person at the time he uses the product." Burke v. Almaden Vineyards, Inc., 86 Cal.App.3d 768, 772 (1978); see also Johnson, 43 Cal.4th at 65-67; Bojorquez v. House of Toys, Inc., 62 Cal.App.3d 930, 933-34 (1976). "[W]hen a sufficient warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Johnson, 43 Cal.4th at 65.

A manufacturer is liable only when a defect in its product was a legal cause of injury. See

Soule, 8 Cal.4th at 572.  A defect is a legal cause of an injury when it is a substantial factor in producing the injury.  See id.; see also Torres v. Xomox Corp., 49 Cal.App.4th 1, 18 (1998).  Something that plays only a "negligible," "infinitesimal" or "theoretical" part in bringing about an injury, damage or loss is not a substantial factor.  Bockrath v. Aldrich Chemical Co., 21 Cal.4th 71, 79 (1999).

*Discussion*

As an initial matter, the Court will sustain Altman's objection to HOS's use of his e-mail in this motion, but will overrule use of the Atlas Bindings warning label.  The e-mail is not referenced in the FAC.  Rather, the e-mail was submitted as part of HOS's reply in relation to its "Motion to Dismiss and/or Strike."  See Court Docket Doc. Nos. 8, 22, 23.  The Court treated that motion as a Rule 9(b)/12(b)(6) motion to dismiss and did not consider the e-mail.  See id. at Doc. No. 26.  Under these circumstances, taking judicial notice of a document that was never considered in a prior motion to dismiss is an improper attempt to avoid Rule 12(d)'s prohibition against reviewing "outside documents" in connection with a Rule 12(b)(6) motion.  The Court does not wish to convert this motion into one for summary judgment and will not consider the e-mail from Altman.  See Fed. R. Civ. Pro. 12(d); Swedberg v. Marotzke, 339 F.3d 1139, 1146 (9th Cir. 2003).  As to the Atlas Bindings warning label, Altman does not sufficiently question the authentication of the warning and the warning is mentioned in the complaint.  Indeed, the warning itself forms the basis for one of Altman's strict liability theories.  Under these circumstances, the warning has been sufficiently incorporated by reference.  See Knievel, 393 F.3d at 1076.  The Court will consider the warning label without converting this motion into one for summary judgment.  See id.

With respect to the breach of warranty claim, the Court will dismiss this claim without prejudice in light of Altman's express request and lack of substantive opposition.

As for the products liability claims, dismissal is appropriate.  HOS is correct in its assessment of the FAC.  Altman has generally tracked the elements of the design defect and failure to warn strict products liability causes of action.  Instead of pleading facts, however, Altman simply alleges legal conclusions. What is conspicuously absent from these claims is an

11

1    identification of what aspect of the Atlas Bindings makes their design and warning defective.

2    With respect to the consumer expectation test, Altman should describe how the Atlas
3    Bindings failed to meet the minimum safety expectations of an ordinary consumer. See Barker,
4    20 Cal.3d at 430; Karlsson, 140 Cal.App.4th at 1208. For example, the following hypothetical
5    allegation would be sufficient: the Atlas Bindings do not meet consumer expectations because
6    their metal strips will unsafely break loose and then pierce the ankle of its wearer during a typical
7    crash, as happened to Altman. Simply alleging that the Atlas Bindings do not meet consumer
8    expectations, see FAC at ¶ 15, is a bare legal conclusion that does not indicate a plausible cause
9    of action. See Iqbal, 123 S.Ct. at 1249-50.

10   With respect to the risk-benefit test, the ultimate burden of showing that the benefit
11   outweighs the risk lies with HOS. See Barker, 20 Cal.3d at 431; McCabe, 100 Cal.App.4th at
12   1121; CACI at § 1204. As such, Altman's reference to "risks and benefits" is appropriate and he
13   is not required to allege how the risks of the Atlas Bindings' design outweigh the benefits.
14   However, Altman does need to allege that the design of the Atlas Bindings was a substantial
15   factor in causing his injuries. See Campbell, 32 Cal.3d at 119; Barker, 20 Cal.3d at 431; CACI at
16   § 1204. A sufficient factual allegation would explain how the particular design of the Atlas
17   Bindings caused Altman harm. For example, the following hypothetical allegation would be
18   sufficient: the angle at which the Atlas Bindings and the wakeboard meet is too acute and does
19   not/did not allow for a safe separation during Altman's crash, which caused Altman to suffer a
20   broken ankle. Such an allegation identifies the particular aspect of the design that is at issue (an
21   improper joining angle) and how that design caused Altman harm (did not allow for safe
22   separation during the crash). The FAC's allegation that the product defects (which are not
23   identified) were substantial causes in causing Altman's injuries, see FAC at ¶ 19, is a legal
24   conclusion that does not allege a plausible cause of action. See Iqbal, 123 S.Ct. at 1249-50.

25   Finally, the defective warning claim suffers from the same flaw. The FAC does not
26   identify how the warning was inadequate. That is, it does not identify which specific danger
27   HOS should have been warning against. See Johnson, 43 Cal.4th at 64; Carlin, 13 Cal.4th at
28   1108-09; CACI § 1205. To state a plausible claim for failure to warn, a complaint should at least

identify which danger was not warned against, that the danger was substantial, that the danger was not readily recognizable to an ordinary consumer, that the manufacturer knew or should have reasonably known of the danger, and causation. See Johnson, 43 Cal.4th at 64-67; Wright, 54 Cal.App.4th at 1230; CACI § 1205. The FAC's allegation that there was inadequate warning,[5] post-marketing warning, and instruction due to an unidentified "known risk of injury," see FAC at ¶¶ 16-17, is a legal conclusion that does not allege a plausible cause of action. See Iqbal, 123 S.Ct. at 1249-50.

As described above, since the design defects and warning defects are not adequately identified, no plausible strict products liability claims are stated. However, since it is not clear that amendment would be futile, the Court will dismiss the FAC with leave to amend. See Gompper, 298 F.3d at 898.

## CONCLUSION

Both parties move for dismissal. With respect to Altman's Rule 41(a)(2) motion, a dismissal of the products liability claim with prejudice as to Sims is appropriate given the representations of HOS. However, if Altman determines that other non-strict products liability theories may be viable against Sims, he may later file a motion to amend his complaint with the Magistrate Judge.

With respect to HOS's motion to dismiss, Altman concedes the inadequacy of his breach of warranty claims. Therefore, those claims will be dismissed without prejudice.

Dismissal of Altman's strict products liability claims is appropriate because, in essence, Altman has not adequately identified the particular defects and warnings that make the Atlas Bindings defective. The FAC merely states legal conclusions and does not allege facts. Because

---

[5]The warning that appears on the Atlas Bindings states that the bindings are "high performance binding[s]," that the use of the bindings and participation in wakeboarding involves inherent risk of injury or death, that even if properly fitted the bindings may or may not release in a fall which may cause injury, and then lists four practices that can reduce the risk of injury. See Moore Decl. at Exhibits B. Although not clear, it appears that HOS is arguing that the warning is sufficient. However, the Court expresses no opinion on this argument because the argument is not adequately developed. The motion cites no pertinent authority and does not discuss the significance of the warning to an appreciable degree. See Court's Docket Doc. No. 30-2 pp. 7-8.

it is not clear that amendment would be futile, dismissal without prejudice is appropriate.

      Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's Rule 41(a)(2) motion to dismiss is GRANTED and Defendant Ben Sims is DISMISSED from this case as described above;
2. Defendant's Rule 12(b)(6) motion to dismiss is GRANTED and this First Amended Complaint is DISMISSED with leave to amend;
3. Plaintiff may file an amended complaint within twenty (20) days of service of this order; and
4. If Plaintiff fails to timely file an amended complaint, then the Court will convert the dismissal to one with prejudice and thereafter will close the case without further notice.

IT IS SO ORDERED.

**Dated:**   **November 19, 2009**           /s/ **Anthony W. Ishii**
                                                   CHIEF UNITED STATES DISTRICT JUDGE